IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES E. STACKHOUSE, AIS 162181, | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 1:23-cv-661-BL |
| TONY HELMS, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

This case is before the court on the amended complaint filed pursuant to 42 U.S.C. § 1983 (doc. 26) by *pro se* inmate James E. Stackhouse, who is proceeding *in forma pauperis*. (Doc. 7.)

Stackhouse has named four defendants in their individual and official capacities: Geneva County Sheriff Tony Helms; Geneva County Commission President Toby Seay; an "Unknown Named Hospital Director/Chairman of the Board of Directors" at Geneva County Hospital; and an "Unknown Named Medical Supervisor/Jail Health Care Supervisor" at the Geneva County Jail. (Doc. 26 at 2–3). He alleges that each defendant violated his constitutional rights when he was administered medicine that caused an allergic reaction in July of 2022 at the Geneva

County Jail.[1] (Doc. 26 at 2–5). Specifically, the amended complaint alleges that the defendants were deliberately indifferent to his medical needs and that his equal protection and due process rights were violated.

Defendants Helms and Seay have filed a Motion for Summary Judgment (doc. 61) with a supporting brief and evidentiary materials (docs. 62, 63), and Stackhouse filed a response in opposition (doc. 68).

Upon review of the parties' filings and for the reasons explained below, the motion will be granted as to the deliberate indifference claim, and the remaining claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ismael v. Roundtree*, 161 F.4th 752, 758 (11th Cir. 2025) (citation omitted). On a motion for summary judgment, district courts must view the evidence in the

[1] Stackhouse misidentified Sheriff Tony Helms as Sheriff "Tony Hamm" in his original and amended complaints. (Docs. 1, 26; *see also* doc. 42 at 1). Additionally, his original complaint named the "Geneva County Commission and Surety Bond Holders" as defendants (doc. 1 at 1), but he replaced these defendants with the unnamed county commission president, later identified as Commissioner Seay, in his amended complaint (doc. 26 at 2). The Clerk will be directed to correct the docket to reflect the proper names of each defendant.

light most favorable to the nonmoving party, and all reasonable inferences must be made in favor of the nonmoving party. *Windom v. Orange Cnty.*, No. 25-10795, 2026 WL 1432142, at *3 (11th Cir. May 21, 2026). However, "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004). For purposes of summary judgment and in accordance with well-settled Supreme Court and Eleventh Circuit precedent, Stackhouse's non-conclusory evidence is believed, and all justifiable inferences will be drawn in his favor.[2] *See Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992).

In addition to ruling on the defendants' summary judgment motion, the court will address the sufficiency of Stackhouse's due process and equal protection claims, which were not addressed in the defendants' motion. *In forma pauperis* proceedings are governed by 28 U.S.C. § 1915, which provides that a court "shall dismiss [a] case at any time if the court determines . . . the action . . . fails to state a claim upon which relief may be granted. . . ." 28 U.S.C. § 1915(e)(2)(B)(ii). Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

---

[2] Because the court must view the evidence in a light most favorable to the non-movant, the facts set forth in this order are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' . . . for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

While detailed factual allegations are not required, a plaintiff must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

## III. RELEVANT FACTS[3]

On January 3, 2022, Stackhouse was arrested and incarcerated at the Geneva County Jail. (Doc. 26 at 12). He informed "jail officials" that he was allergic to ACE inhibitor drugs. (*Id.)* The nurse at the jail found Stackhouse's pharmacy, obtained a list of his prescriptions, and ordered a six-month supply. (Docs. 26 at 12; 62-3 at 19, 29–31). Stackhouse says he was given the correct medication during the

[3] The facts set forth herein derive from the sworn or verified pleadings and evidentiary materials filed by the parties. However, "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment." *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003), *as amended* (Sept. 29, 2003)). In ordering a response to the defendants' summary judgment motion, the court advised Stackhouse that any discussion of evidence in his response must include specific references to where the evidence can be found in the supporting evidentiary submission or in any document filed with the court. (Doc. 64 at 1). The court also warned that it was not required to consider documents cited improperly, referred Stackhouse to Rule 56 of the Federal Rules of Civil Procedure, and warned that he could not rely on unsworn pleadings but must oppose the motion with sworn affidavits, declarations, depositions, or other evidentiary materials. (*Id.* at 1–2). While Stackhouse's amended complaint was submitted under penalty of perjury, he submitted no evidentiary materials and cited no record evidence in his summary judgment response. (*See* doc. 68). Thus, the contentions included in the facts above are taken from his amended complaint.

first six months of incarceration but that his supply ran out in July 2022 and he was then given a different medication that contained an ACE inhibitor. (Doc. 26 at 12–13).

According to Stackhouse, almost immediately after his medications were switched, he experienced an allergic reaction where his body and head swelled and his blood pressure was "off the chart." (*Id*. at 13). He was taken to the hospital and given a shot to bring it down. (*Id*.) Two days later when he returned to the jail, he was given the wrong medicine again, his throat swelled almost shut, and he was taken back to the hospital. (*Id*.) When he returned to the jail, he began to swell again. (*Id*.)

After a call from his sister to jail staff, Stackhouse was taken to the emergency room at the Geneva County Hospital because his whole body was swollen. (*Id.* at 14). He was transferred to another hospital, where he stayed for thirty days, with eighteen of those days spent in intensive care. (*Id*.) Stackhouse alleges his blood pressure was so high he was on the verge of a stroke. (*Id*.) He also claims the doctor at the hospital told him the jail had given him the wrong medication. (*Id*.)

The medical records produced by Defendants reflect that Stackhouse was first seen for high blood pressure by a nurse at the jail in May 2022.[4] (Doc. 62-3 at 20).

---

[4] It is not clear from the evidentiary materials how many nurses treated Stackhouse while he was incarcerated at the Geneva County Jail. Some of the nurse notes in his medical records were

Stackhouse could not provide a list of his current medications, but the nurse noted his allergy to ACE inhibitors and stated she would follow up with Dr. Simmons.[5] (*Id*.) In August, a nurse was able to locate his prescriptions at a local pharmacy, and the list was sent to Dr. Simmons. (*Id*. at 19). Stackhouse was seen by Dr. Simmons throughout his treatment at the jail, and the records indicate that Dr. Simmons prescribed and made all changes to Stackhouse's medications from May until his December 9 hospital admission. (*Id*. at 2, 14–20). The record reflects that the only change Dr. Simmons made to Stackhouse's blood pressure medication was the addition of Lisinopril on November 25, 2022, after Stackhouse had already been complaining of swelling in various parts of his body for a couple of months. (*Id*. at 14–17).

The records further show that Stackhouse was seen by Dr. Simmons at the Wiregrass Medical Center emergency room for elevated blood pressure in August 2022 and that Stackhouse checked out of jail on October 17 to go to Dr. Simmons's office for blood pressure and throat pain. (Doc. 62-3 at 16–18, 27–28, 33–39). He checked out again on December 8 to go to the Geneva County Medical Center for an ultrasound of his neck and on December 9 to go to the hospital. (*Id*. at 14–16).

---

entered by "Marian Clemmons, RN," but no name appears in the remaining notes. (*See* doc. 62-3 at 14–20).

[5] Although neither party explains the capacity in which Dr. Simmons treated Stackhouse while he was incarcerated at the Geneva County Jail, medical records from Wiregrass Medical Center list him as Stackhouse's admitting and attending physician. (*See, e.g.*, Doc. 62-3 at 37–38).

Stackhouse claims he still experiences throat pain because his throat had to be stretched open by the hospital because he was given the wrong medication in jail. (Doc. 26 at 15).

## IV. STACKHOUSE'S CLAIMS

In describing his claims against Commissioner Seay in the amended complaint, Stackhouse states as follows:

> [He has] supervisory responsibility over the county sheriff and care of the inmates in county jail; violated the "C.R.I.P.A." (Civil Rights of Incarcerated Persons Act), by showing deliberate indifference to the medical needs of inmates and not properly supervising [Sheriff Helms] in the care of inmates['] serious medical needs; which equates to cruel and unusual punishment (8th Amend. U.S. Const.) also due process of law and equal protection of the law (14th Amend.)

(Doc. 26 at 16). Against Sheriff Helms, he states:

> Failure to properly supervis[e] his medical staff by not monitoring inmate complaints; violating "C.R.I.P.A." (Civil Rights of Incarcerated Persons Act) causing Plaintiff to suffer cruel and unusual punishment (8th Amend. U.S. Const.) also showing deliberate indifference to inmates['] medical needs; denial of due process and equal protection of the law (14th Amend. To U.S. Const.)

(*Id.*) With respect to monitoring inmate complaints, Stackhouse alleges that he filed a grievance through the jail's kiosk system and that he complained to the nurse but that she "denied it." (*Id.* at 8). He also asserts that Sheriff Helms "knew [he] was allergic to ACE inhibitors" and that he substituted a "cheaper generic brand" of medicine containing an ACE inhibitor while billing Medicare for the more expensive medication (*id.* at 8, 14–15), but he offers no factual details and points to no

evidentiary support for these conclusory statements. As relief, he seeks punitive damages and compensatory damages. (*Id.* at 5).

Sheriff Helms denies the allegations made by Stackhouse and states that all actions he and the nursing staff took were properly conducted pursuant to standard protocol. (Doc. 62-1 at 2–3). He also argues, *inter alia*, that liability cannot be imposed based on his supervisory status or under a theory of respondeat superior. (Doc. 63 at 4). Commissioner Seay also denies the allegations against him, denies any involvement with the daily operations of the sheriff or the jail or inmate medications, and argues that Plaintiff has failed to establish a causal connection to the alleged constitutional violation. (Doc. 62-2 at 2–3; Doc. 63 at 5–6).

## V. DISCUSSION

### A. Equal Protection and Due Process Claims

Stackhouse's claims of equal protection and due process violations fail as a matter of law. To state an equal protection claim, a plaintiff must allege that similarly situated persons have been treated differently through state action. *Hernandez v. Palm Beach Cnty. State Att'y*, No. 23-11024, 2023 WL 9642821, at *2 (11th Cir. Aug. 31, 2023) (citing *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006)). To state a due process claim, a plaintiff must show "(1) a deprivation of a constitutionally protected liberty or property interest; (2) state

action; and (3) constitutionally-inadequate process." *Humphreys v. Comm'r, Georgia Dep't of Corr.*, 161 F.4th 1300, 1311 (11th Cir. 2025) (citation omitted).

Here, Stackhouse's "claims" for these constitutional violations are mere stray remarks in his amended complaint. He has not identified a similarly situated individual who was treated differently than he was, and he has not described any type of inadequate process that deprived him of a liberty or property interest. Even construed liberally, there are simply no allegations in the amended complaint related to his equal protection or due process rights. Stackhouse simply asserts that those rights were violated, and nothing in the complaint supports his claims.

District courts have discretion to dismiss *in forma pauperis* complaints "at any time" if the action fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Because Stackhouse has failed to assert a single allegation relating to a violation of his equal protection or due process rights, his amended complaint fails to state a claim on which relief can be granted. As a result, these claims are due to be dismissed under 28 U.S.C. § 1915(e)(B)(ii).

### B. Deliberate Indifference Claim against Sheriff Helms and Commissioner Seay

Deliberate indifference to the serious medical needs of prisoners can constitute a violation of the Eighth Amendment's prohibition on cruel and unusual punishments. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability on a deliberate indifference claim, a plaintiff must demonstrate that he suffered a

deprivation that was objectively "sufficiently serious" and that the defendant acted with "subjective recklessness as used in the criminal law." *Wingo v. WellStar Health Sys., Inc.*, 160 F.4th 1184, 1190 (11th Cir. 2025) (cleaned up) (quoting *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024)). To show "subjective reasonableness," a plaintiff must show "the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Gantt v. Everett*, 162 F.4th 1107, 1111 (11th Cir. 2025) (quoting *Wade*, 106 F.4th at 1262).

Here, the Court need not evaluate the subjective and objective components of Stackhouse's deliberate indifference claims because he has failed to establish a causal link between the alleged constitutional violations and the defendants named in this action. To state a viable § 1983 claim, a plaintiff must establish a causal connection between each defendant's "actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights." *Frankum v. Chapman*, No. CIV.A.08-0373-CG-M, 2009 WL 1118875, at *3 (S.D. Ala. Apr. 24, 2009); *see also Trotter v. Corr. Med. Servs., Inc.*, No. CIV.A. 06-0183-WS-M, 2008 WL 2225696, at *9 (S.D. Ala. May 29, 2008).

Stackhouse's deliberate indifference claims against Sheriff Helms and Commissioner Seay are premised solely on their roles as supervisors, as nothing in the amended complaint indicates that either of these defendants played a role in

Stackhouse's medical treatment or that they had any knowledge about the medications being prescribed or administered to him. Instead, Stackhouse attempts to hold Commissioner Seay liable for his failure to properly supervise the sheriff, and he attempts to hold Sheriff Helms liable for his failure to properly supervise the jail medical staff.

Section 1983 does not make supervisors automatically liable for their subordinates' actions on the basis of *respondeat superior* or vicarious liability. *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Instead, "supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* at 1360. Because Stackhouse has not alleged personal participation by Sheriff Helms or Commissioner Seay, he must establish a causal connection between the actions of these defendants and the alleged constitutional deprivation.

A plaintiff can establish a causal connection sufficient for supervisory liability in one of three ways: (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed

subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (citing *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007)); *see also Cottone*, 326 F.3d at 1352.

Taking Stackhouse's allegations as true and assuming he was administered a medication containing an ACE inhibitor by medical personnel treating him at the Geneva County Jail, he does not allege a history of similar widespread failures or abuse that would put Sheriff Helms or Commissioner Seay on notice of the need to correct the deprivation, and he does not allege a custom or policy that would result in deliberate indifference to the inmates' receiving the correct medicine. Indeed, he asserts no factual allegations at all about Commissioner Seay, and his complaints about Sheriff Helms are that he knew of Stackhouse's allergy and failed to monitor inmate complaints. Even if true, these bare allegations do not establish that Sheriff Helms directed subordinates to act unlawfully or knew they were acting unlawfully and failed to stop them, particularly when Stackhouse claims to have submitted only one grievance.[6] He also makes allegations about substituting cheaper generic medicine in order to commit Medicare fraud; however, as stated above, these

[6] Stackhouse also states that "every officer on every shift" filed a grievance on his behalf (doc. 26 at 3), presumably to show that Sheriff Helms ignored or disregarded multiple complaints, but he presents no evidence to support this claim.

statements are speculative and conclusory and unsupported by any evidence in the record.

Thus, nothing in the amended complaint establishes a causal connection between Sheriff Helms or Commissioner Seay and the administration of an ACE inhibitor medication to Stackhouse, and they are entitled to judgment as a matter of law.

With respect to Commissioner Seay, if the claims against him did not fail due to a lack of factual support for causation, case law establishes that the necessary causal link between counties and sheriffs does not exist in Alabama. In *McMillian v. Monroe Cnty., Ala.*, the United States Supreme Court held that in Alabama "the county commission . . . has no direct control over how the sheriff fulfills his law enforcement duty" because "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." 520 U.S. 781, 791, 793 (1997). The sheriff, not the county or its commissioners, "has control over the inmates of the jail, the employees of the jail, and the jail itself." *Turquitt v. Jefferson Cnty., Ala.*, 137 F.3d 1285, 1289, 1291 (11th Cir. 1998) ("The County cannot be liable for the harms that befall jail inmates due to improper operation of the jail or negligent supervision of its inmates because the County has no responsibility in that area."). Consequently, Commissioner Seay cannot be held

liable for failing to ensure that the sheriff or his medical staff gave Stackhouse the correct medication, and he is entitled to judgment as a matter of law.[7]

### C. Official Capacity Claims against Sheriff Helms

Even if the claims against Sheriff Helms were not due to be dismissed for the reasons above, he is entitled to Eleventh Amendment immunity on Stackhouse's official capacity claims against him. Official capacity suits against state officials are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). It is well-settled that Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it. *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent Stackhouse seeks monetary damages from Sheriff Helms in his official capacity as

---

[7] The court notes that it previously ordered Stackhouse to amend his complaint and advised him, among other things, that he must name as defendants the individuals who were personally responsible for the alleged constitutional violations, describe what each defendant did that violated his rights, and describe how each defendants' acts or omissions harmed him. (Doc. 22 at 2). In response, Stackhouse amended his complaint to include claims based only on supervisory liability with no factual details connecting them to his medical treatment. (Doc. 26.)

a state employee, he is entitled to sovereign immunity. *See, e.g.*, *Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995).

**D. Unnamed, Unserved Fictitious Defendants**

In the section of his amended complaint where Stackhouse was directed to identify the defendants in this action, he listed an "Unknown Named Hospital Director/Chairman of the Board of Directors" at Geneva County Hospital and an "Unknown Named Medical Supervisor/Jail Health Care Supervisor." (Doc. 26 at 3). Generally, "fictious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). The Eleventh Circuit recognizes a limited exception to the general rule when a plaintiff's description of a person is so specific that the person's name would essentially be surplusage. *See Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992).

Here, Stackhouse's description of the fictitious parties was not specific enough to allow service of process. With respect to the first fictitious defendant in particular, it is not clear whether Stackhouse intended to sue a hospital director or the chairman of the board of the hospital. The body of the amended complaint sheds no light on the identity of these individuals, as neither party is mentioned in Stackhouse's statement of the facts. (*See* doc. 26).

In the section titled "Violation of each Defendant," for the medical supervisor/jail health care supervisor, Stackhouse states that the "jail's nurse and medical staff showed deliberate indifference . . . by administration of the medicine after prisoner's objection; denied proper medication; causing severe pain and emotional distress." (Doc. 26 at 17). It is not clear whether Stackhouse intended to sue an individual employed by Sheriff Helms or if he intended to sue a physician outside the jail who directed the nurse or nurses to administer certain medications to Stackhouse. He goes on to describe the Geneva County Hospital's violation (with no mention of a "hospital director" or "chairman of the board") by stating, "[w]hile some medical treatment was received by plaintiff inmate, it may have been so inappropriate as to be intentional mistreatment and it may have been deliberate indifference to withhold one medication while giving another know[n] to aggravate inmate's condition." (Doc. 26 at 17). Taken together, the vague and ambiguous statements about the fictitious parties fail to provide a sufficient description that renders their names mere surplusage.[8] Furthermore, despite Stackhouse's lack of knowledge of the identity of these fictitious parties, the record reflects no attempt to

[8] Even if the fictitious defendants had been identified and served, as with Commissioner Seay, the amended complaint fails to describe a particular act or omission by these defendants. Stackhouse's claims against the fictitious defendants are based on supervisory liability, but there are no allegations describing their participation in his medical treatment and no allegations of a history of widespread abuse that would have put them on notice of the need to correct the alleged deprivation, a custom or policy that resulted in deliberate indifference to constitutional rights, or facts supporting an inference that one of these defendants directed subordinates to act unlawfully or knew they would and failed to stop them.

discover their names while this case or to amend the complaint to identify them for service.[9]

Accordingly, due to Stackhouse's failure to properly name the parties and provide identifiable information, none of the unnamed parties were served. Thus, they will be dismissed as fictitious parties and for lack of timely service. *See* FED. R. CIV. P. 4(m).

## VI. CONCLUSION

For the reasons stated above, it is **ORDERED** as follows:

1. Stackhouses's claims of equal protection and due process violations are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief can be granted;

[9] On the issue of discovery, the court notes that Stackhouse argued in various filings that Defendants failed to produce unredacted copies of his records from the Wiregrass Medical Center and copies of his records from Flowers Hospital. (*See, e.g.*, doc. 49). While Stackhouse is correct that the court ordered the defendants to produce complete and unredacted copies of medical records related to his claims, the defendants appear to have complied with the court's order. (*See* doc. 65, Defendants' response representing that they redacted only medical information relating to other inmates and Stackhouse's personal identifying information). Stackhouse filed notices of intent to serve subpoenas on Flowers Hospital, Sheriff Helms, and the Wiregrass Medical Center (docs. 51–53); however, he never submitted the subpoenas to the Clerk for issuance after filing the notices of intent. To the extent Stackhouse maintains that the defendants were obligated to obtain copies of his medical records from a medical provider outside the jail, as explained by the court before the defendants filed their summary judgment motion, Stackhouse was free to request his own medical records directly from his medical providers without the necessity of a subpoena or other discovery tool. (*See* doc. 60 at 2 n.1). At any rate, hospital records showing that Stackhouse was, in fact, given an ACE inhibitor medication and that he suffered the injuries claimed in his amended complaint would not establish supervisory liability by Sheriff Helms or Commissioner Seay.

2. The Motion for Summary Judgment (doc. 62) filed by Defendants Helms and Seay is **GRANTED** with respect to Stackhouse's deliberate indifference claims; and

3. The claims against the fictitious parties are **DISMISSED** without prejudice for failure to identify the parties and perfect service as required by Rule 4(m) of the Federal Rules of Civil Procedure.

The Clerk is **DIRECTED** to amend the electronic docket to reflect that the named defendants in this action are Tony Helms, Geneva County Sheriff, and Toby Seay, President of the Geneva County Commission.

Final judgment will be entered separately.

**DONE** and **ORDERED** on this the 16th day of September, 2026.

BILL LEWIS
UNITED STATES DISTRICT JUDGE